# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:06-CV-01651-RDP |
| } | |
| **$178,858.00 IN UNITED STATES** } | |
| **CURRENCY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Before the court is Claimant Derrick Ervin's Motion to Set Aside Judgment and Order of Forfeiture (Doc. #20), filed on June 10, 2013. The Motion (Doc. #20) has been fully briefed (Docs. #23, #24). For the reasons outlined below, the Motion (Doc. #20) is due to be denied.

**I.   Procedural History**

Plaintiff United States of America initiated this lawsuit by filing a Verified Complaint for Forfeiture In Rem (Doc. #1) on August 21, 2006. After the government properly executed process in accordance with Rule C(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Docs. #2, #3, #4), Claimant Derrick Ervin filed an Answer (Doc. #5) on October 5, 2006, asserting a claim to the property. After the status conference held on March 9, 2007, the court stayed the case until July 30, 2007 (Doc. #6), to allow for the resolution of a related criminal case. The stay was lifted on August 2, 2007 (Doc. #10), and Claimant filed a Motion to Withdraw Verified Claim (Doc. #12) on January 18, 2008, consenting to the forfeiture of Defendant property. Plaintiff filed a Motion for Consent Judgment and Order of Forfeiture (Doc. #13) on January 18, 2008 and the court entered a Consent Judgment and Final Order of Forfeiture (Doc. #15) on January 23, 2008.

On June 10, 2013, Claimant filed a Motion to Set Aside Judgment and Order of Forfeiture (Doc. #20), pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure.

**II.    Facts**

On February 16, 2006, officers of the Birmingham Police Department ("BPD") engaged in surveillance of a Birmingham, Alabama apartment complex, where they suspected that illegal drug activity was occurring. (Doc. #1 at ¶ 3(b)).  In the course of the surveillance, the officers observed three individuals exit an apartment at the complex, one of whom was carrying a black bag. (Doc. #1 at ¶ 3(b)).  An officer followed the group to the rear of the apartment complex, where he heard a vehicle being unlocked and locked and a handgun being "chambered" with a round of ammunition. (Doc. #1 at ¶ 3(b)).  The officer proceeded to approach the 2002 green GMC Denali truck that the group was standing by, identify himself as "Birmingham Police," and ask who had chambered the round. (Doc. #1 at ¶ 3(c)).  One of the individuals, who would subsequently be identified as Derrick Ervin, pulled a handgun from his pants and fired a number of shots in the direction of the officer. (Doc. #1 at ¶ 3(c)).  All three of the individuals left the scene on foot, but were apprehended shortly thereafter. (Doc. #1 at ¶ 3(c)-(e)).

Determining that the 2002 green GMC Denali was registered to Derrick Ervin, BPD officers impounded the vehicle and obtained a state search warrant for the truck. (Doc. #1 at ¶ 3(f)).  After a drug detection dog used by BPD officers indicated that controlled substances were present in the vehicle, DEA agents and BPD officers executed the search warrant. (Doc. #1 at ¶ 3(g)).  During the search of the truck, the agents/officers found a black bag containing $160,840.00 in bundled cash, a shoe box containing $18,000 in bundled cash, and an additional $18 in cash. (Doc. #1 at ¶ 3(g)).  In total, law enforcement officers seized $178,858.00 in U.S. currency as a result of the search.

BPD officers also obtained and executed a search warrant of the apartment that the three individuals had been seen leaving on the night of February 16, 2006. (Doc. #1 at ¶ 3(h)). The search produced a gym bag containing ten packages of cocaine hydrochloride weighing eighteen kilograms, a box containing fourteen baggies of cocaine hydrochloride weighing thirty-one ounces, and forty-three methylenedioxymethamphetamine (a.k.a., MDMA or Ecstasy) pills. (Doc. #1 at ¶ 3(h)).

In light of the circumstances in which it was discovered, law enforcement authorities determined that the $178,858.00 in U.S. currency seized during the search of the 2002 green GMC Denali was furnished, or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Title 21, United States Code, Chapter 13, Subchapter I. (Doc. #1 at ¶ 5). As such, the currency was subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6). (Doc. #1 at ¶ 5).

### III.   Standard of Review

Federal Rule of Civil Procedure 60(b) provides parties with a limited avenue for seeking relief from final judgments. *Gonzalez v. Crosby*, 545 U.S. 524, 528-29 (2005). In particular, Rule 60(b)(4) allows parties to seek relief from final judgments that are "void." Fed.R.Civ.P. 60(b)(4) (2013). Such relief is available, because "a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). "A judgment is 'void' under Rule 60(b)(4) if it was rendered without jurisdiction of the subject matter or the parties or in a manner inconsistent with due process of law." *Oakes v. Horizon Financial, S.A.*, 259 F.3d 1315, 1318-19 (11th Cir. 2001). "Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdiction defect generally have relief only for the exceptional

case in which the court rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds, Inc.*, 559 U.S. at 271. Indeed, "it is well-settled that a mere error in the exercise of jurisdiction does not support relief under Rule 60(b)(4)." *Oakes*, 259 F.3d at 1319. Rather, a Rule 60(b)(4) motion will only sound in those instances where there was a "total want of jurisdiction." *U.S. v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990).

In the interest of promoting "consistency and certainty in the law," "courts will not disturb final judgments unless the moving party demonstrates the existence of extraordinary circumstances." *Id*. at 660. "A 'significantly higher' standard is generally used to decide whether a movant is entitled to relief under Rule 60(b)." *Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir. 2001). In the context of Rule 60(b)(4), a motion "may be granted only when the movant can show 'exceptional circumstances' that would result in 'an extreme and unexpected hardship.'" *U.S. v. Billion Int'l Trading, Inc.*, 2012 WL 1156356 at *1 (N.D. Ga. 2012) (citing Fed.R.Civ.P. 60(c)(1); *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)). Courts are "particularly reluctant to reopen decrees entered by consent because in making such agreements the parties have voluntarily and consciously decided not to contest the legal and factual elements of the case." *Boch Oldsmobile, Inc.*, 909 F.2d at 660.

**IV.   Discussion**

After careful review, and for the reasons stated below, the court concludes that Claimant's motion should be denied.

   **A.   Overview of Claimant's Arguments in Support of the Motion to Set Aside Judgment**

In his Motion to Set Aside Judgment and Order of Forfeiture (Doc. #20), Claimant asserts that the court's Consent Judgment and Final Order of Forfeiture (Doc. #15) is void for want of jurisdiction. (Doc. #20 at ¶ 13). Claimant asserts that exclusive state court jurisdiction attached

upon seizure of Defendant currency, as the seizure was made 1) by local authorities, and 2) pursuant to a search warrant issued by the Jefferson County Circuit Court. (Doc. #20 at ¶¶ 11, 13). Characterizing the state court's jurisdiction as both prior and exclusive, Claimant argues that this court was precluded from later assuming or exercising *in rem* jurisdiction over the seized currency.[1] Claimant follows this line of argument to its logical end, concluding that the district court's lack of jurisdiction renders the Consent Judgment and Order of Forfeiture (Doc. #15) void.[2]

Claimant's theory is drawn from a mixture of state and federal cases, which, at least superficially, seem to provide support for his Motion to Set Aside (Doc. #20). *See Ex parte Consolidated Graphite Corp.*, 129 So. 262, 265 (Ala. 1930) ("where the action is *in rem*, as in this case, that court which first acquires jurisdiction draws to itself the exclusive authority to control and dispose of the *res*"); *see also Kline v. Burke Construction Co.*, 260 U.S. 226, 229 (1922); *Garrett v. State*. 739 So.2d 49, 52 (Ala.Civ.App. 1999). However, the court must look at the substance of Claimant's argument, not merely its surface. After reviewing the substance of the argument, the court rejects it.

**B.     The District Court Properly Exercised *In Rem* Jurisdiction Over Defendant Currency**

"A forfeiture proceeding is not an action against the claimant but rather is an *in rem* action against the seized property . . . " *United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1543 n.2 (11th Cir. 1987). In the context of *in rem* proceedings, it is generally

---

[1] Doc. #20 at 2 ("[T]he Jefferson County Circuit Court acquired subject-matter jurisdiction, or *in rem* jurisdiction over Ervin's property, FIRST, upon seizure of the property on February 17, 2006, using process issued by that court; Therefore the defendant *res* was immediately withdrawn from this Court's jurisdiction altogether preventing this court from acquiring lawful jurisdiction over his property pursuant to established federal law.").

[2] Doc. #20 at ¶ 15 ("Because this Court could not exercise valid subject-matter jurisdiction over Ervin's property at the time it entered its judgment and order, with respect, this Court's judgment and order declaring Ervin's property forfeit is void, as a matter of law.).

accepted that "[a] state court and a federal court cannot simultaneously exercise [] jurisdiction over the same property." *United States v. $270,000 in United States Currency*, 1 F.3d 1146, 1147 (11th Cir. 1993).  Such a rule is intended "[t]o avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction…" *Penn General Casualty Co. v. Commonwealth*, 294 U.S. 189, 195 (1935) (citations omitted).

While it is well-settled that "a federal court may not take jurisdiction over property seized by a federal agent prior to the termination of a state court proceeding involving the same *res*," *United States v. $506,231 in United States Currency*, 125 F.3d 442, 448 (7th Cir. 1997), it must be emphasized that "[t]he logical and practical difficulty of two courts simultaneously vying for possession or control of the same property is the key; thus, if only one of the actions is *in rem* or *quasi in rem*, both cases may proceed side by side," *United States v. $79,123.49 in United States Cash and Currency*, 830 F.2d 94, 97 (7th Cir. 1987).  Indeed, "the jurisdictional boundaries between federal and state courts in the forfeiture context turn on whether and when a particular court exercised *in rem* or *in personam* jurisdiction." *City of Concord v. Robinson*, 914 F.Supp.2d 696, 709 (M.D.N.C. 2012).

In the present case, BPD officers seized Defendant currency incident to a search warrant issued by the Jefferson County Circuit Court. (Doc. #1 at ¶ 3(f)-(g)).  At that point, the Jefferson County Circuit Court had the *opportunity* to assert *in rem* jurisdiction, either by affirmatively undertaking state forfeiture proceedings or taking steps to prevent federal authorities from gaining possession of the currency. *United States v. Winston-Salem/Forsyth County Bd. of Educ.*, 902 F.2d 267, 271 (4th Cir. 1990) ("[F]or the state court to have exclusive jurisdiction over the cash under *Penn General*, the state forfeiture proceeding must have been initiated prior to the

6

federal forfeiture proceeding and both the state and federal forfeiture proceedings must have been *in rem*"); *United States v. $506,231 in United States Currency*, 125 F.3d 442, 448 (7th Cir. 1997) (finding that state court had sufficiently exercised jurisdiction by "making it clear that it was not willing to hand the property over on a platter to the federal authorities"). If a state court action related to this *res* had been filed, the state court would have been vested with exclusive jurisdiction over the currency, such that a federal court would have been prevented from then asserting jurisdiction over that *res*. *Kline*, 260 U.S. at 229 ("[W]here the [*in rem*] jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction"). However, the state declined to exercise this option. The only action prosecuted as to the *res* was in federal court. Indeed, the record demonstrates that the state agreed to the transfer of the currency to federal agents. (Doc. #20 at ¶¶ 3, 4, 10). "If [] a state court has only exercised *in personam* jurisdiction over the owner of the drug proceeds, then federal forfeiture of the proceeds is available." *City of Concord*, 914 F.Supp.2d at 705. Because no state court was instituted in the Jefferson County Circuit Court, no bar existed on the federal exercise of jurisdiction.

    This notion—that a federal court can properly take possession of and assume jurisdiction over property seized at the state level—has been referred to by some courts as "adoptive forfeiture." *See, e.g.*, *United States v. $12,390.00*, 956 F.2d 801, 803 (8th Cir. 1992); *Winston-Salem/Forsyth County Bd. of Educ.*, 902 F.2d at 272; *United States v. $6,207.00 in United States Currency*, 2009 WL 2169167 at *5 (M.D. Ala. 2009). "In adoptive forfeiture, the state or local seizing agency turns the property over to federal authorities for forfeiture, and the state or local authorities do not take affirmative steps to seek forfeiture. After a federal agency adopts a state or local seizure, the property is deemed to have been seized by the federal government, and is

thus subject to exclusive federal jurisdiction as of the date of seizure." 3 Criminal Practice Manual § 107:67 (2013).

Whether or not the "adoptive forfeiture" label is affixed to the present case, the doctrine's operative characteristic (*i.e.*, state court complicity in federal forfeiture proceedings) is present in instant case, and that eliminates any concern that animate the so-called "rule of prior exclusive jurisdiction." *$79,123.49 in United States Cash and Currency*, 830 F.2d at 99. The threats posed to federalism and comity by the usurpation of jurisdiction or the maintenance of parallel proceedings are nonexistent in the present situation, as the state court has made no attempt to assert *in rem* jurisdiction.

As such, this court's consideration of the Verified Complaint for Forfeiture (Doc. #1) was a proper exercise of *in rem* jurisdiction. Lacking a jurisdictional defect, the Consent Judgment and Final Order of Forfeiture (Doc. #15) cannot be deemed void and are not due to be set aside pursuant to Rule 60(b)(4).

**V.     Conclusion**

For the reasons stated above, Claimant's Motion to Set Aside (Doc. #20) is due to be denied.

**DONE** and **ORDERED** on October 3, 2013.

/s/ R. David Proctor

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE